IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK E. SISNEROZ, ) | CV F 01-5058  AWI DLB |
| ) | |
| Plaintiff, ) | ORDER ON PLAINTIFF'S |
| ) | REQUEST FOR INJUNCTIVE |
| v. ) | RELIEF. |
| ) | |
| BILL WHITMAN, et al., ) | |
| ) | |
| Defendants ) | Doc. # 94 |
| _____ ) | |

      This is a civil rights action by plaintiff Frank E. Sisneroz ("Plaintiff") against Bill Whitman, Tulare County Sheriff, et al. ("Defendants") that arises out of Plaintiff's claims for relief relating to his conditions of confinement in Tulare County during proceedings to determine his status under the Sexually Violent Predators Act ("SVPA"). On November 8, 2005, the court vacated its previous judgment in favor of Defendants because the court found that jury instructions used during trial were erroneous and prejudicial. On November 23, 2005, the parties reached a stipulated agreement resolving the damages portion of Plaintiff's claim for relief.  The court directed further briefing by the parties regarding Plaintiffs request for injunctive relief on December 7, 2005.  Plaintiff submitted further briefing on January 10, 2006, and Defendants filed further briefing in opposition on January 18, 2006.  Due to temporary unavailability of Plaintiff, proceedings were stayed upon Plaintiff's request.  Plaintiff filed his reply brief on March 31, 2006.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The SVPA, California Welfare and Institutions Code, section 6600 et seq., provides for the involuntary civil commitment of individuals who meet the definition of sexually violent predator, as defined in section 6600, subdivision (a). Pursuant to section 6604.1, the term of civil commitment upon a determination of sexually violent predator status is two years. After each term of civil commitment, the SVPA requires that continuing commitment be ordered only completion of an evaluation of the individual's risk of re-offense pursuant to section 6601, subdivisions (c) and (i). These periodic reevaluations are assigned to courts in the county where the evaluation authorizing the first commitment was carried out. See Johnson v. Santa Clara County, 203 WL 22114269 (N.D. Cal. 2003) at *2 (temporary housing at county jail facilities reasonably necessary to accomplish purposes of SVPA).

The complaint in this case was filed on January 18, 2001. The factual basis of Plaintiff's claims for relief alleged in the complaint is based on conditions of confinement that Plaintiff experienced during his confinement in jail facilities in, and operated by, Tulare County during proceedings in 2000 to determine whether Plaintiff would be subject to continuing commitment. The gist of the complaint is that Plaintiff was subjected to conditions of confinement that included confinement with the general prison population, lockdown for between 23 and 24 hours per day and being subject to, inter alia, strip searches conducted in public.

Jury trial was conducted from March 23 through March 25, 2004. On the third day of jury trial, the court granted judgment as a matter of law in favor of Defendants on all claims except the fifth claim for relief. The fifth claim for relief states, in pertinent part:

> Violation of substantive due process under the Fourteenth Amendment of the United States Constitution.
>
> [¶ . . . . ¶]
>
> Defendants' policies, practices subjected plaintiff to conditions of confinement that are punitive and often times worse than the conditions under which penal commitments and prisoners are held.

> The aforementioned denied the plaintiff the rights and protections provided by the Fourteenth Amendment of the Constitution of the United States of America.

On March 25, 2004, the jury returned a verdict in favor of Defendants. On November 8, 2005, the court vacated the judgment in favor of Defendants, having found the jury was erroneously charged. See Jones v. Blanas, 393 F.3d 918 (9th Cir. 2004) (conditions of confinement for detainees under SVPA to be determined on Fourteenth Amendment standards, not Eighth Amendment standards). On November 23, 2005, the parties reached a stipulated agreement partially resolving the action by agreeing to the amount of monetary damages. On December 8, 2005, the court entered an order reflecting the stipulated agreement. The court directed further briefing as to what, if any, issues pertaining to injunctive relief remain. Plaintiff filed his brief regarding requested injunctive relief on December 23, 2005. Defendants filed opposition to Plaintiff's requests for injunctive relief on January 18, 2006. Plaintiff filed his reply to Defendants' opposition on March 31, 2006. This order discuss Plaintiff's requests for injunctive relief and the further steps the parties are to take to resolve this action.

## PLAINTIFF'S REQUESTS FOR INJUNCTIVE RELIEF

Plaintiff's request for injunctive relief consists of a laundry list of 33 separate requests. The following reflects Plaintiff's list, but in some cases items have been summarized or combined for the sake of brevity. Plaintiff's demand that each request for injunctive relief also include that cause be shown in writing for any denial of the requested right is also omitted for the sake of brevity.

1. That Tulare County jail policies, practices and customs for civil, detainees, of housing be in the accordance with the rights provided by the [C]onstitution and the laws of the United States of America and by the State of California.

2. That civil detainees live separate from penal inmates and state prisoners.

3. That civil detainees not be housed in the jail infirmary, presumably the infirmary located in the old jail facility.

4. That civil detainees be fed two hot meals per day and one cold meal, rather than two

3

cold meals and one hot meal per day.

5. That civil detainees receive recreation separate from convicted jail inmates and state prisoners.

6. That civil detainees receive "some privacy rights" and that the living areas of civil detainees not be subject to search or the civil detainees themselves not subject to strip searches without probable cause

7. That the least possible restrictions be imposed on civil detainees with regard to retention of their personal and legal property.

8. That civil detainees be protected from verbal and physical harassment and "abuse by other penal inmates and by staff/deputy."

9. That civil detainees be taken up and resolved in a timely manner and that their grievances be address through procedures that comport with due process and equal protection guarantees.

10. Plaintiff requests that Defendants be required to provide a number of general conditions of housing for civil detainees including requirements that: (1) blue jump suits be provided or civil detainees be allowed to wear personally obtained clothing; (2) access to shower once a day or every other day be provided; (3) 6 hours of visitation per week be allowed; and, (4) access to a telephone, small radio and television in detainees' living areas be provided.

11. That civil detainees receive access to a legal library an assistance with operation of the computer while doing legal research for six hours per week.

12. That civil detainees receive medical care equal to that provided at Atascadero State Hospital or department of mental health services.

13. That civil detainees "retain personal property while being transported to the custody of Tulare County facilities.

14. That civil detainees receive "8 hours of exercise outdoors or indoors including cell clean."

15. That civil detainees "must be housed in the Old County Jail, in a two man cell or a four man tank cell."

16. That civil detainees be assigned to a cell within one hour of arrival at the County Jail.

17. That Civil Detainees be allowed the same access to canteen items or be allowed to order through the canteen to the same extent as road camp inmates or low-risk inmates would be allowed.

18. That civil detainees be allowed access to religious materials of their own or from the outside.

19. "That civil detainees be classified pursuant to Welfare & Institutions Codes, schemes for example, (W&I Code § 6250) (LPSA § 5000), not under previous old charges."

4

20. That policies for civil detainees at Tulare County jail facilities be formulated pursuant to relevant state and federal statutes and that they be updated yearly and signed by the Tulare County Sheriff and relevant administrative officials.

21. "That civil detainees have access to the lieutenant or sergeant or to the Patients' Rights Advocacy Inc., and the Patients' Rights Advocacy Inc, be notified that persons under Welf. & Inst. Code § 6600 are in custody at Tulare County jails, and to check on those Civil Detainees."

22. Plaintiff makes a number of requests pertaining to the transportation of detainees under the SVPA to an from Tulare County facilities including: (1) that they be transported by Tulare County Sheriffs Department; (2) that the transport be 5 to 10 days before the scheduled court appearance and that transportation back to the hospital be within 5 days of the court appearance; (3) that transportation not occur with any penal inmates; and (4), that civil detainees being transported to an from court be only minimally restrained.

23. Plaintiff requests copies of injunctive relief ordered be deliver to various county officials.

## LEGAL STANDARD

To obtain relief under 28 U.S.C., section 1983, a plaintiff must prove (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). In order to obtain permanent injunctive relief under section 1983, the plaintiff must show that substantial and immediate irreparable injury is likely and that legal remedies are inadequate. LaDuke v. Nelson, 762 F.2d 1318, 1333 (9th Cir. 1985). "Because a state agency must be granted latitude in the operation of its internal affairs, injunctive relief is appropriate only when irreparable injury is threatened, and the injunctive relief 'must avoid unnecessary disruption to the state agency's normal course of proceeding.' [Citation.]" Ashker v. California Dep't Correction, 350 F.3d 917, 921-922 (9th Cir. 2003).

## DISCUSSION

There are two overarching defects in Plaintiff's request for injunctive relief. The first is that none of the individual requests are worded to allege an irreparable injury or imminent threat of injury resulting from violation of a right guaranteed under the Constitution or federal law. Rather, what the initial request for injunctive relief consists of is a number of statements that amount to proposed policy provisions to regulate various aspects of Plaintiff's conditions

5

of confinement in a manner Plaintiff would prefer. The purpose of injunctive relief is to prevent constitutional or legal injury. It follows that, as a precondition to any grant of injunctive relief by the court, a plaintiff is required to allege and prove by a preponderance of evidence specific instances of harm or threatened harm resulting from violation of specific rights under the Constitution or under federal law. Plaintiff presents no authority that would lead this court to conclude it is empowered to construct institutional policy according to the subjective desires of the plaintiff.

The second defect is that Plaintiff's request for injunctive relief fails to address or account for the policy regulating treatment of civil detainees under the Sexually Violent Predator Act (the "SVP policy") that was implemented by Tulare County in 2004.[1] Tulare County's SVP policy addresses many of the issues raised by Plaintiff's request for injunctive relief, and the court has no basis to find that the implementation of the policy results in violation of constitutional or legal rights in those areas regulated by the policy.[2]   Rather, Tulare County's implementation of the SVP policy provides evidence that the County has recognized issues that were the subject of Plaintiff's complaint and the subject of Plaintiff's requests for injunctive relief, and that implementation of the policy effectively reduces the likelihood of constitutional violations occurring where civil detainees are in county custody under the SVPA.

The court finds that the implementation of Tulare County's SVP policy argues

---

[1] The court takes judicial notice of Tulare County's SVP policy, which is included as an attachment to Defendants' opposition to Plaintiff's request for injunctive relief.

[2] Although the issue of mootness is arguably raised by the facts of this case, neither party has addressed whether the adoption of the 2004 Tulare County policy on the treatment of civil detainees under the SVPA moots some or all of Plaintiff's request for injunctive relief. See Sample v. Johnson, 771 F.2d 1335, 1338-1339 (9th Cir. 1985) (explaining mootness doctrine and its limited exception for issues "capable of repetition, yet evading review"). Because the issue has not been addressed and because Plaintiff's individual requests for injunctive relief are otherwise insufficient to warrant injunctive relief, the court will not address the issue except to note that in any future pleading, Plaintiff will have the burden to show there remains a live issue to be decided. Id.

forcefully against the finding of a "clear and plain case" of threat of continuing constitutional violation.  See Gomez v. Vernon, 255 F.3d 1118, 1128 (9th Cir. 2001) (injunctive remedy against a state agency to be applied "sparingly and only in a clear and plain case").  Plaintiff's failure to allege specific instances of constitutional violation as to each individual request for injunctive relief prevents the court from finding there is an imminent threat of irreparable harm warranting injunctive relief.

In his reply to Defendants' opposition to his statement of items for injunctive relief, Plaintiff impliedly acknowledges his failure to allege any specific instances or patterns of constitutional or statutory violation and attempts to rescue his claims by alleging "examples" of constitutional shortcoming in Tulare County's SVP policy.  In general, Plaintiff's "examples" suffer from the same defect as his initial request for injunctive relief; that is, Plaintiff alleges that the policy is deficient in some particular, but fails for the most part to allege any occurrence of current, or threat of future, constitutional harm arising from the policies.  A brief discussion of each of Plaintiff's "examples" follows.

Plaintiff first alleges the SVP policy is deficient because it makes no provisions for "rights under [Welfare and Institutions] Code, sections 5325 and 5235.1, and also Title 22 and Title 9."  As previously discussed, Plaintiff fails to allege any facts to indicate how the omissions noted have, or will likely, result in a constitutional violation.  In addition, Plaintiff fails to show why the SVP policy should include provisions pursuant to the referenced statutes.  To the extent Plaintiff is attempting to state an equal protection claim, that claim must fail because persons facing commitment under the SVPA are not similarly situated to those under California's other civil commitment schemes, such as the Lanterman-Petris-Short ("LPS") Act and the mentally disordered offender law.  See LPS Act, Cal. Welf. & Inst. Code §§ 5325, et seq.; Cal.Penal Code § 2962 ("MDO law"); Munoz v. Kolender, 208 F.Supp.2d 1125, 1136 (S.D. Cal. 2004); People v. Buffington, 74 Cal.App.4th 1149, 1158-59 (3rd Dist. 1999) (not all persons committed under California's various civil commitment statutes are

7

similarly situated in all respects); see also id. at 1162-1163 (persons committed under MDO law and SVPA are not similarly situated for equal protection purposes regarding treatment: "Prisoners who suffer from conditions that may with treatment be kept in remission are the target of the MDO Act, whereas the SVPA covers prisoners whose conditions pose a risk of future sexually violent criminal behavior and who may never be completely treated"). One notable difference is that an individual may not be committed as a SVP unless he has been convicted of a sexually violent offense against two or more victims. Cal. Welf. & Inst.Code § 6600(a), whereas it does not appear that an actual past violent crime is required for an individual facing LPS Act commitment proceedings. The existence of past violence affects the prediction of future violence, see Hubbart v. Superior Court, 19 Cal.4th 1138, 1157 (Cal.1999), and the likelihood of future violence is a legitimate governmental interest custodians may take into consideration in making custody determinations. Because SVPs are not similarly situated to those facing commitment under other provisions, a necessary element for an equal protection claim is missing.

Second, Plaintiff appears to claim that the placement of civil detainees into "administrative segregation" somehow violates the detainees liberty interest under the Fourteenth Amendment. As noted above, there is a legitimate governmental interest in taking into consideration the likelihood of violence by, and against, civil detainees under the SVPA. Plaintiff does not explain how placement in administrative segregation would likely result in irreparable injury to Plaintiff's legitimate liberty interest. Plaintiff's comments with respect to administrative segregation provide no basis for issuance of injunctive orders.

Plaintiff's third "example" centers on food and the provision of hot meals. Plaintiff's initial request for injunctive relief asks the court order Kern County jail to provide two hot meals per day to civil detainees, instead of one, as Plaintiff alleges is Kern County's practice. Plaintiff's reply focuses on case authority that establishes that deprivation of food does, in fact, implicate detainee constitutionally guaranteed liberty interest. He points to the fact the

policy does not specify caloric content or temperature at the time of serving to detainees. However, Plaintiff never alleges there was a deprivation of food, nor does Plaintiff cite authority for the proposition that Plaintiff is entitled to two hot meals per day instead of one. As above, Plaintiff has failed to allege facts that indicate he has been or is likely to be at imminent risk of irreparable harm as a result of depravation of a constitutionally guaranteed right.

Plaintiff's fourth "example" appears to relate to the fact the SVP policy specifies that civil detainees under the SVPA are to be housed under administrative segregation, which the county deems appropriate in "an infirmary cell, single cell with individual cell with individual programming schedule, or multi-person cell with programming restricted to those inmates of similar classification." Plaintiff's request for injunctive relief appears to be focused on conditions of confinement in the Bob Wiley Infirmary Facility at the Kern County Jail. He alleges those conditions include no telephone, no hot water, limited canteen access, no sheet change, no cleaning of the cell, cold food in general, and inadequate access to religious materials.

As discussed above, the constitutionally guaranteed liberty interests that come into play in the decision of where a SVPA detainee is housed are subject to consideration of the needs and capabilities of the agency and the security concerns inherent in the detainee's classification as a sexually violent predator. Plaintiff presents some generalized complaints about conditions in the Bob Wiley Infirmary facility, but fails to allege facts to show that the institutions legitimate security concerns do not make such placement necessary under the circumstances. Further, Plaintiff alleges the allegedly sub-standard conditions he encountered in 2002 were still in place in 2004. Plaintiff has no information concerning conditions of confinement in the Bob Wiley Infirmary facility since the implementation of the SVP policy. The SVP policy directly addresses may of Plaintiff's list of alleged conditions including access to telephones, canteen, and access to religious materials. As discussed

above, the fact the policies were implemented represents substantial that those conditions that are addressed by the SVP policy now conform to constitutional and statutory requirements. Again, Plaintiff's generalized allegations of poor housing conditions are not sufficient to warrant injunctive relief because they fail to establish that the conditions of confinement constitute an imminent threat of irreparable harm as a result of the violation of a constitutional or statutory right.

Plaintiff's fifth "example" is incomprehensible. It appears Plaintiff is basing his request for injunctive relief on the fact that the SVP policy specifies that "telephone access, access to medical care, mail and personal property shall meet the minimum requirements set out in Title 15 of the California Code of Regulations." Why or how this could be the basis for injunctive relief is not stated.

Plaintiff's sixth "example," which is labeled number 7, alleges inadequacies of the law library at Tulare County Jail facilities. It is not clear whether Plaintiff is alleging his access is physically limited or that the resources available are constitutionally deficient. Further, Plaintiff does not allege how deficiencies, either in the materials available or in his access to the law library, results in a threat of imminent harm. As Defendants point out, deficiencies in access to a law library reach constitutional proportions when a detainee or criminal defendant is unable to adequately prepare his case because of the deficiency. The court has no basis to find that Plaintiff has been prevented in any way from either adequate access to law libraries or that any limitation that might occur during his housing at Tulare County facilities rises to the level of constitutional depravation.

## CONCLUSION AND ORDER

The court requested additional briefing from the parties to gain an understanding of the issues that remain and to assess the need for further evidentiary hearings. Based on Plaintiff's submission of an extensive list of generalized grievances, the court must conclude Plaintiff has a fundamental misunderstanding of the limited nature of the remedies available

10

to him through injunctive relief.  Put bluntly, these proceedings are not an opportunity for Plaintiff to air general grievances or to litigate the details of Tulare County Policy.  To obtain injunctive relief, Plaintiff must allege specific facts applicable to him and to conditions of confinement that he is likely to encounter that constitute violations of rights guaranteed to him by the United States Constitution or by federal statute.  Any such factual allegations must take into account Tulare County's SVP policy and must show that the alleged depravation of rights is likely to occur even if the provisions of the SVP policy are in force.

With these admonitions in mind, it is HEREBY ORDERED that Plaintiff shall submit to the court a pleading titled "Request for Injunctive Relief" which shall set forth clearly specific requests for injunctive relief that comport with the requirements discussed above.  Plaintiff's Request for Injunctive Relief shall be filed and served not later than 21 days from the date of service of this order.  Failure to file a formal Request for Injunctive Relief shall be considered a failure to prosecute the case and shall result in dismissal of the action.  Within 21 days of service of Plaintiff's Request for Injunctive Relief, Defendants shall file and serve a motion to dismiss, or motion for summary judgment, or a statement of non-opposition, as appropriate.  Plaintiff may file and serve any opposition to Defendants' motion within 14 days of the date of service of such motion.  Defendants may file and serve any reply within 7 days of the date of service of Plaintiff's opposition.

IT IS SO ORDERED.

**Dated:    August 31, 2006**              **/s/ Anthony W. Ishii**
0m8i78                                      UNITED STATES DISTRICT JUDGE